BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant GORDON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR-07-0585 EDL |
|---|---|---|
| Plaintiff, | ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | ) | |
| RON ANTHONY GORDON, | ) | Hearing Date: January 28, 2008<br>Time: 9:30 am |
| Defendant. | ) | |

**INTRODUCTION**

Defendant Ron Anthony Gordon stands before this Court to be sentenced on his misdemeanor conviction for possession of an identification document with intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4). Because Mr. Gordon's criminal history category significantly overrepresents the seriousness of his prior criminal conduct, Mr. Gordon respectfully submits this sentencing memorandum in which he seeks a sentence of one year probation – the sentence jointly agreed to by the parties in the plea agreement.

///

///

///

**BACKGROUND**

On September 13, 2007, a one count Information was filed in the Northern District of California charging Mr. Gordon with a violation of 18 U.S.C. § 1028(a)(4), possession of an identification document with intent to defraud the United States. The offense conduct occurred on or about March 9, 2001, outside the normal five-year statute of limitations that is provided for most criminal offenses, but within the extended ten-year statute of limitations that is provided for this offense.

While Mr. Gordon acknowledges that he has made certain mistakes in his past, since the offense conduct at issue here, he has significantly turned his life around and is now on the right track. *See* Exhibits A-C. Indeed, as explained in the attached letters from his family, Mr. Gordon has been doing extraordinarily well since 2001 – he is a devoted father, son, and partner. *Id*.

Shortly after this offense conduct, Mr. Gordon met his now-fiancé, Alison Slaughter, and the two have been together ever since. Ex. A. They have a four-year old daughter, Kaia, who means everything to Mr. Gordon. Ex. A-C. He is devoted to Kaia and makes it a priority to be a good role model for her. He enjoys spending time with her, including taking her to and from school, cooking her breakfast every morning, and having dinner with her and Ms. Slaughter ever evening. *Id*.

Meeting Ms. Slaughter and having Kaia have grounded Mr. Gordon and forced him to make certain changes in his life. *Id.* Specifically, he dedicated himself to getting a college education so that he could better support his family, and in May 2006, he received his Bachelor of Science in Business Administration from Sacramento State University. At the time of this arrest in August 2007, Mr. Gordon had put his degree to good use and was working for the State of California Board of Equalization. Now, he is working as a Reconciliation Specialist at State Street, a provider of financial services to institutional investors. Since his fiancé has been placed on disability leave, Mr. Gordon is the primary source of financial support for his family, and he is

committed to succeeding in that role. Ex. A. In addition, Mr. Gordon also plays a large role in supporting his mother. Ex. B & C. He not only visits her on a regular basis, but he cares for her whenever needed. *Id.* Because of all of this, he needs a certain degree of flexibility in his schedule so that he can be available to take care of his mother and daughter as necessary.

## DISCUSSION

### I. Recent Supreme Court Authority Supports a Sentence of Probation

Recent Supreme Court authority makes clear that this Court has the authority to sentence Mr. Gordon one year of probation.

In *Gall v. United States*, 128 S. Ct. 586 (2007) and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the U.S. Supreme Court resoundingly supported a district court's ability to fashion an appropriate individualized sentence, which will be reviewed with the same abuse of discretion deference regardless of the degree of variance from the United States Sentencing Guidelines:

> We now hold that, while the extent of the difference between a particular sentence and the recommended Guideline range is surely relevant, courts of appeals must review all sentences whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard. We also hold that the sentence imposed by the experienced District Judge in this case was reasonable.

*Gall*, 128 S. Ct. at 591.

The Court's decision in *Gall* rejects an "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guideline range." *Id.* at 595. That heightened showing that was required for below-guideline sentences comes "too close to creating an impermissible presumption of unreasonableness." *Id*. The Court's decision similarly rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*.

The Court in *Gall* lays out the procedure to be undertaken by the district court:

(1) "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency,

the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however." *Id.* at 596.

(2) "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable . . . He must make an individualized assessment based on the facts presented." *Id.* at 596-97.

(3) "If [the district court] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* at 597.

(4) "After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

In its review of the district court's sentence, the appellate court may not presume that a sentence outside the guidelines is *un*reasonable.  "[I]f the sentence is outside the Guidelines range, the [appellate] court may not apply a presumption of unreasonableness. It may consider the extent of the variation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

Additionally, the Court in *Gall* made abundantly clear that while a term of probation is less severe than a term of incarceration, it is nonetheless a significant punishment as it substantially restricts an individual's liberty.

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))).  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the

court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3.

*Id.* at 595 -596 (internal footnotes omitted).

## II.  Mr. Gordon's Criminal History Category is Significantly Overstated

The Presentence Report ("PSR") on Mr. Gordon concludes that he has eight criminal history points, placing him in Criminal History Category IV. Mr. Gordon's prior criminal conduct is significantly less serious than that of most defendants in the same criminal history category; therefore, he respectfully requests that he be granted a two category variance and/or downward departure in his criminal history, bringing him to Criminal History Category II. The PSR recognizes that a downward departure may be warranted in this case. PSR at ¶67.

Mr. Gordon's criminal history category is overstated because several conviction for which the defendant received criminal history points occurred over ten years ago. *Id*. While convictions this old are generally not counted in criminal history computation, they are counted here because the offense conduct occurred in 2001 (and the offense for which he was convicted has a ten year statute of limitations). If we were to only count criminal history points accrued in the ten years prior to the filing of the information, he would only have three points; and if we were to only count criminal history points accrued in the ten years prior to the date for sentencing, he would only have two points.

Most importantly, as the PSR states: "Since his criminal conduct in the instant offense in 2001, the defendant has had no new criminal convictions, other than traffic infractions." PSR at ¶67. Indeed, it is clear from Mr. Gordon's rap sheet that he turned his life around in 2001. That is when he met his now-fiancé, enrolled as a full time student at a university, and committed to his life as a productive member of this society.

Mr. Gordon respectfully requests the Court grant a one category downward departure and variance in his criminal history, bringing him to Criminal History Category II.

///

### III. The Court Should Adopt the Plea Agreement's Recommendation of One Year of Probation

In the plea agreement in this case, the parties jointly recommend a sentence of one year probation, a $500 fine, and a $25 special assessment. At the time this plea was entered, the parties were aware that this sentence was a below-guidelines sentence given Mr. Gordon's criminal history category. Nonetheless, the parties agreed to jointly recommend a sentence of one year probation given the following circumstances. First, the "victim" of this crime is Mr. Gordon's brother, Greg Enrique Gordon, who requested that Mr. Gordon be given leniency. Ex. B. Second, the passport that Mr. Gordon sought was never used. Indeed, Mr. Gordon thought better of it, and abandoned any further wrongful conduct. Third, since this offense conduct, Mr. Gordon has stayed out of trouble, graduated from college with a Bachelor of Science degree, and started a family. For all of these reasons, the parties agreed that a sentence of one-year probation was "sufficient, but not greater than necessary" to achieve the sentencing goals of 18 U.S.C. § 3553 given Mr. Gordon's conduct and personal circumstances. Mr. Gordon respectfully requests that the Court follow the joint recommendation of the parties.

### CONCLUSION

For the reasons stated, Mr. Gordon respectfully requests that the Court adopt the joint recommendation of the parties and sentence him to one year of probation.

Dated: January 22, 2008

                                          Respectfully submitted,

                                          BARRY J. PORTMAN
                                          Federal Public Defender

                                          /S/

                                          JODI LINKER
                                          Assistant Federal Public Defender